Case 2:20-cv-00018-Z-BR Document 54 Filed 06/01/20 Page 1 of 17 PageID 814



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VENABLE'S CONSTRUCTION INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-018-Z-BR |
| | § | |
| ONEOK ARBUCKLE II PIPELINE, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

For approximately 450 miles, the southern bank of the Red River forms the boundary line separating Texas and Oklahoma. For over 150 years, the Red River has served as the backdrop for myriad "border battles" between Texans and Oklahomans: (1) the Greer County War, 1867–1894; (2) *United States v. Texas*, 162 U.S. 1 (1896); (3) *Oklahoma v. Texas*, 258 U.S. 574 (1922), 260 U.S. 606 (1923), 265 U.S. 500 (1924); (4) the Red River Bridge War of 1931; and (5) the annual Red River Showdown football game between the Texas Longhorns and the Oklahoma Sooners.[1] Here, the Court must resolve a *jurisdictional* dispute between a Texas-based construction company and an Oklahoma-based natural gas company regarding a pipeline running *under* the Red River— from Duncan, Oklahoma, to Bowie, Texas.

I. **BACKGROUND**

Venable's Construction Inc. ("Plaintiff"), is a Texas construction company based in Amarillo, Texas. ONEOK Arbuckle II Pipeline, LLC ("Defendant") is a natural gas company based in Tulsa, Oklahoma. In the summer of 2018, Plaintiff and Defendant entered into a

---

[1] The University of Texas leads the overall series (62–48–5), but the University of Oklahoma has won seven of the last ten games played in Dallas, Texas. (The 2018 Big XII Championship game was played at AT&T Stadium in Arlington, Texas, did not involve the Golden Hat trophy, and is not counted as a Red River Showdown game.)

1

Construction Services Agreement ("Contract"). Under the original Contract, Plaintiff would construct "Spread 2" of Defendant's Arbuckle II Pipeline Project (the "Pipeline"). Spread 2 spans approximately eighty miles—from Duncan, Oklahoma to Bowie, Texas. Relevant here, the Pipeline would be constructed through the Western District of Oklahoma, under the Red River, and into the Northern District of Texas.

For reasons to be determined, the Pipeline was not constructed in accordance with the Contract. Plaintiff claims that Defendant failed to provide the proper right of ways—leading to interruptions and disruptions that prevented Plaintiff from timely constructing the Pipeline. Defendant claims that Plaintiff failed to properly manage the construction operations—leading to Plaintiff's own sluggish performance that caused Defendant to amend the Contract and re-bid the Texas work to another construction company. Essentially, both parties allege the other is in breach of the Contract and both seek damages and other forms of relief. When mediation proved unsuccessful, the parties raced to the court.

At 2:00:04 p.m. (CST), on January 20, 2020, Plaintiff filed its original complaint against Defendant in this Court—the Northern District of Texas, Amarillo Division ("Texas Action"). Three hours later, at 5:00 p.m. (CST), Defendant filed its own suit against Plaintiff, but in the Western District of Oklahoma, Oklahoma City Division ("Oklahoma Action"). These parallel proceedings contain substantially similar claims arising from the same underlying subject matter.

Before the Court are two motions—one from each party. On February 21, 2020, Plaintiff filed its Motion to Enjoin (ECF No. 12), seeking to prevent Defendant from prosecuting the case in the Western District of Oklahoma. On February 26, 2020, Defendant filed its Motion to Transfer (ECF No. 16), seeking to transfer this case to the Western District of Oklahoma. While neither

party disputes that venue is proper in the Amarillo Division, the primary dispute is over what venue is *most* appropriate—Amarillo or Oklahoma City.

## II. STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and Defendant.

## III. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), courts have broad discretion to transfer "any civil action to any other district or division where it might have been brought" initially when it is "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter, "*Volkswagen II*") (citing *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting the "relaxed standards for transfer")). This rule is met if, at the time of filing: (1) any defendant resided in that district or division, and (2) all defendants resided within the state. 28 U.S.C. § 1391(b)(1). Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

The moving party bears the burden to show that there is "good cause" for transfer and must demonstrate "that the transferee venue is clearly more convenient," and "in the interest of justice." *Volkswagen II*, 545 F.3d at 315. In most transfer cases, courts examine eight private and public interest factors. *Id.* The four *private* interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

(hereinafter, "*Volkswagen I*") (citing *Piper Aircraft*, 454 U.S. at n.6). The four *public* interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

While these factors "are not necessarily exhaustive or exclusive," the Fifth Circuit notes that "none . . . can be said to be of dispositive weight." *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). "Public and private factors aside, a court must also independently consider how much weight to assign a plaintiff's choice of forum." *Seramur v. Fed. Ins. Co.*, No. 3:19-CV-1678-B, 2019 WL 3253369, at *2 (N.D. Tex. June 19, 2019) (Boyle, J.) (citing *Davis v. City of Fort Worth*, No. 3:14-CV-1698-D, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014) (Fitzwater, J.). "A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Id.* (internal marks omitted) (quoting *Sivertson v. Clinton*, No. 3:11-CV-0836-D, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011) (Fitzwater, J.). Furthermore, courts shall not consider the convenience of counsel because it is irrelevant to the analysis. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *see also Volkswagen I*, 371 F.3d at 206 (holding that it is reversible error for the district court to consider the convenience of counsel). Therefore, "within the district court's sound discretion, exercised in light of the particular circumstances of the case . . . the court must balance the two categories of interest—private and public—to resolve whether the movant has carried his burden." *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Lauren Engineers & Constructors, Inc.*, No. 3:19-

4

CV-1742-S, 2019 WL 6071073, at *1 (N.D. Tex. Nov. 14, 2019) (Scholer, J.) (internal marks omitted).

## IV. ANALYSIS

The parties do not dispute, and the Court concludes, Plaintiff could have originally brought this action in either the Northern District of Texas or the Western District of Oklahoma. Thus, the Court finds venue is proper in this district and division. Accordingly, since venue is proper in either district, the Court turns its attention to the balance of the private and public factors.

### A. Private Factors for the Convenience of the Parties

Defendant asserts that transfer to the Western District of Oklahoma is appropriate based on the private factors for convenience. Defendant argues that all four private factors weigh in favor of transfer, but Plaintiff disagrees. Accordingly, the Court will examine each factor and determine whether each factor weighs in favor of transfer.

#### 1. *Relative Ease of Access to Sources of Proof*

First, the Court looks to the relative ease of access to sources of proof. *Volkswagen I*, 371 F.3d at 203. Defendant argues that the location of non-party witnesses is what should control in assessing this factor. Specifically, Defendant cites to *BNSF Ry. Co. v. OOCL (USA), Inc.*, and its determination that "[t]he convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue." 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009). However, *BNSF* runs contrary to Defendant's argument. Ultimately, the *BNSF* Court found that transfer was not warranted. *Id.* The *BNSF* Court explained that (1) the movant's desired court was not the closest court to the location of the underlying events, (2) the movant failed to show any accessibility problems to "documentary or electronically-stored data," and (3) the "suit

will turn on proof of the terms of [the] agreement" between the parties and whether there was a breach of contract. *Id.* at 710–11.

Similar to *BNSF*, Defendant's arguments fail under this factor. First, while Oklahoma City is closer to the Pipeline than Amarillo, another court, the Wichita Falls Division of the Northern District of Texas, is *even closer* to the Pipeline than Oklahoma City. And Defendant does not seek transfer to the court that is the *closest* to the location of the underlying events—the Lawton Division of the Western District of Oklahoma. Second, Defendant fails to show that sources of proof such as documentary or electronically-stored data is less accessible with venue in Amarillo. Third, this case will turn on the terms of the Contract and whether either party breached the terms contained therein. Thus, the most important evidence will come from the parties to the contract rather than non-parties.

Based on the claims for breach of contract, fraud, and misrepresentation as detailed by Plaintiff's claims and Defendant's counterclaims, the parties would have *suffered* harm in the location of the parties' principle places of business. In other words, evidence from Amarillo and Tulsa will hold paramount significance in determining damages and other relief. Thus, there is some evidence in Amarillo, some evidence in Tulsa, and some evidence scattered along the eighty miles of construction from Duncan, Oklahoma to Bowie, Texas.

Alternatively, Defendant identifies third-party witnesses that will be inconvenienced with travel to Amarillo as compared to Oklahoma City. ECF No. 16, at 9. However, while the location of non-party witnesses is important under other private factors, Defendant fails to show—due to proximity—that these sources of proof are inaccessible with an Amarillo venue. In particular, there is no requirement that these witnesses must travel to Amarillo or Oklahoma City to provide evidence—especially with modern video-conferencing technology and amidst the novel COVID-

19/Coronavirus Pandemic. Defendant also fails to identify *specific* evidence will be more accessible in Oklahoma City, or inaccessible in Amarillo. Therefore, Defendant does not pursaude the Court that this factor weighs in favor of transfer. At best, this factor is neutral. *See Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-CV-2815-M, 2017 WL 1547013, at *2 (N.D. Tex. Apr. 28, 2017) (Lynn, C.J.) (finding this factor to be neutral because "neither party describes specific documents that will be more accessible if the case is tried in Texas instead of Massachusetts"); *see also SEC v. Blackburn,* No. 4:14-CV-812-LG-CMC, 2015 WL 11120724, at *2 (E.D. Tex. June 30, 2015) (finding this factor to be neutral because there was "little dispute that most of the relevant documents in this action are available or are capable of being produced electronically").

### 2. *Availability of Compulsory Process to Secure the Attendance of Witnesses*

"The second private interest factor, the availability of compulsory process to secure the attendance of witnesses, favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Moore v. Payson Petroleum Grayson, LLC*, No. 3:17-CV-1436-M-BH, 2018 WL 514258, at *5 (N.D. Tex. Jan. 23, 2018) (Carrillo-Ramirez, M.J.) (cleaned up). "A subpoena may command a person to attend a trial, hearing, or deposition" if it is "within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." FED. R. CIV. P 45(c)(1)(A). However, the party seeking transfer must "specifically identify the key witnesses and outline the substance of their testimony." *Moore*, 2018 WL 514258 at *5 (cleaned up).

Here, Defendant identifies potential witnesses and their locations in relation to the two courts. ECF No. 16, at 9–13. Defendant specifically proffers evidence from some of these witnesses, but not for others. *Id.* With regard to non-party witnesses and their proximity to the

7

Court, Defendant correctly argues that the Western District of Oklahoma has subpoena power over more non-party witnesses to compel their testimony at trial. However, there is no evidence that any of the non-party witnesses are unwilling to testify, thereby necessitating the compulsory process to secure their attendance. *See McNew v. C.R. Bard, Inc.*, No. 1:19-CV-195-H, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (Hendrix, J.) ("this factor is neutral because [the defendant] has not provided the Court with any reason to suspect that there may be unwilling witnesses in this case."). While this factor may indeed prove to be neutral, at this time, the Court concludes this factor weighs in favor of transfer.

### 3. *The Cost of Attendance for Willing Witnesses*

The next factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. The Court may only consider the convenience of the parties and witnesses and cannot afford any consideration to the convenience for counsel. *Id.* at 206. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204–05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

Here, Defendant is correct in that the cost of attendance for some non-party witnesses could be lower in the Western District of Oklahoma. Defendant claims that certain non-party witnesses have "relevant" information and dubs them as the parties "most likely to possess information and employ persons who can provide testimony that is directly relevant to [Plaintiff]'s claims." ECF No. 16, at 11. However, of the parties that allegedly *might* testify, Defendant does not assert that

any are *expected* to testify. *See Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 170 (S.D. Tex. 1995). Tellingly, Defendant argues that these persons are "key" non-party witnesses because they have "the most personal knowledge . . . of a significant portion of [Plaintiff's] claims" —that is— "[a]side from perhaps ONEOK" and its employees. ECF No. 16, at 10.

Defendant claims that Dustin Weese, Kiley Nail, Bryan Jewett, Levi Lee, and William Hamby are persons with the most knowledge of Defendant's counterclaims and defenses. *Id.* at 12. Defendant posits that "testimony and records of these witnesses will be critical evidence in support of Defendant's affirmative claims related to inspection costs, as well as Defendant's setoff defense against [Plaintiff's] claim based on the same grounds." *Id.* at 12–13. These generalizations do not qualify as identifying witnesses and outlining their testimony with specificity. *See BNSF*, 667 F. Supp. 2d at 711. Accordingly, because Defendant fails to delineate why these witnesses are critical to the disposition of the case, the Court rejects considering these witnesses in the convenience analysis.

Furthermore, based on Defendant's arguments, the Court observes that the Oklahoma City Division of the Western District of Oklahoma is not the *most* convenient court to all parties and witnesses. Both the Lawton Division of the Western District of Oklahoma and the Wichita Falls Division of the Northern District of Texas are closer to the pipeline than the transferee court. But Defendant doesn't seek transfer to these "local" courts. Instead, Defendant seeks transfer to the Oklahoma City Division of the Western District of Oklahoma—a venue not far from Defendant's headquarters in Tulsa. And it is improper for the Court to shift the burden of convenience from one party to another. *See First Preston Mgmt., Inc. v. AFR & Assocs., Inc.*, No. 308-CV-0690-G, 2008 WL 5136916, at *5 (N.D. Tex. Dec. 5, 2008) ("This court has observed that litigation is usually inconvenient for all parties involved, and cases should not be transferred where the only

practical effect is to shift inconvenience from the moving party to the nonmoving party."). Accordingly, based on the consideration of a few allegedly critical non-party witnesses, the Court concludes that this factor weighs in favor of transfer, but with little weight.

### *4. All Other Practical Problems for an Easy, Expeditious, and Inexpensive Trial*

The last private factor to consider is the catchall of "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203; *see also Moore*, 2018 WL 514258, at *7 (finding factor was neutral when movant failed to specifically address any "other practical problems" and only reiterated previous arguments). Defendant argues that this factor weighs in favor of transfer. ECF No. 16, at 14. The Court disagrees.

First, most arguments presented are reiterations of previous arguments. Specifically, Defendant points to compelling witnesses to testify, travel distance for counsel, location of witnesses, increased costs of travel, and familiarity with Oklahoma law. But this factor contemplates *other* practical problems. The only new argument presented by Defendant is as follows: Plaintiff's "behavior acknowledges the strong connection between the subject claims and the Western District of Oklahoma" because Plaintiff engaged in (1) a "contractually required meeting" and (2) a mediation in Oklahoma City, Oklahoma. *Id.* at 14–15.

The Court refuses to find that Plaintiff's faithful commitment to its contractual obligations to attend meetings and mediation is somehow evidence that transfer would make trial easy, expeditious, and inexpensive. To find otherwise would surely incentivize forum-shopping litigants to curtail their contractual responsibilities. Defendant's argument also backfires. Here, Defendant has *also* exhibited behavior acknowledging a strong connection between Defendant and the Northern District of Texas as it entered the into the Contract with an Amarillo-based construction

company to build a natural gas pipeline across Texas. Thus, while both parties have strong connections with both states, this fact bears no relation to "other practical problems."

While the Court will address the public factors below, it must note the Fifth Circuit's admonishment in another case seeking transfer:

> This case is not being consigned to the wastelands of Siberia or some remote, distant area of the continental United States. The minor inconvenience Exxon may suffer in having to litigate this case in Tyler—only 203 miles distant—rather than in Houston, can in no rational way support the notion of abuse of discretion.

*Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). Further, as noted in a recent case before this Court, "the Court's civil docket is open for an easy, expeditious, and inexpensive trial—one that the Court is pleased to schedule." *Barton v. C. R. Bard, Inc.*, No. 2:19-CV-181-Z, 2020 WL 1809702, at *5 (N.D. Tex. Apr. 9, 2020) (Kacsmaryk, J.). If the parties so choose, the Court is amenable to amending the scheduling order and set a trial date within one year from this date. The Court concludes that Defendant has failed to meet its burden for transfer under this factor.

### B. Public Factors in the Interest of Justice

Defendant asserts that all four public factors also weigh "heavily" in favor of transfer. ECF No. 16, at 6. In summary, Defendant argues transfer is warranted because (1) this Court is burdened by its pending caseload, (2) Oklahoma's public policy dictates that this suit be heard in local Oklahoma courts, (3) the Western District of Oklahoma is more familiar with the applicable law, and (4) unnecessary problems in the application of foreign law would be avoided. The Court will address the public factors each in turn.

#### 1. *Administrative Difficulties Flowing from Court Congestion*

The first public factor examines administrative difficulties flowing from court congestion. *See Volkswagen I*, 371 F.3d at 203. Defendant presents the Court with a rough data analysis in an

11

attempt to show that *this* Court is "congested" when compared to the Western District of Oklahoma. ECF No. 16, at 7. Defendant posits that, on average, each district judge in the Northern District of Texas is assigned 1,349 cases—which is allegedly "six times the average caseload of judges in the Western District of Oklahoma." *Id.* Defendant concludes its data-analysis by stating:

> These figures starkly reflect that the Northern District of Texas, as a whole, is significantly more overburdened than the Western District of Oklahoma and certainly suggests that the parties would find less administrative backlog and a shorter path to a trial setting on the subject claims in the Western District of Oklahoma.

*Id.* at 8. But this factor does not apply to *district* congestion—and certainly not to a district as large and diverse as the Northern District of Texas "as a whole." *Id.* As the language clearly states, this factor applies to *court* congestion. *Volkswagen I*, 371 F.3d at 203. Accordingly, this Court rejects Defendant's proposed data analysis. Certainly, as one skilled statistician put it, "data is useless without context." NATE SILVER, THE SIGNAL AND THE NOISE: WHY SO MANY PREDICTIONS FAIL-BUT SOME DON'T 254 (2012).

Of the myriad reasons the Court rejects Defendant's data analysis, it will address three fatal flaws. First, the number of cases in this *district* is neither indicative of the number of cases pending before this *Court* nor indicative of district-wide congestion.[2] Thus, applying the 16,182 pending cases with a one-to-one ratio produces misleading results. And with the addition of context, *thousands* of the 16,182 cases arise from a colossal products-liability action pending before Judge Ed Kincaid in the Dallas Division. Second, while the disposition of these cases affects the perceived average age of cases pending in this *district*, they have no effect on the average age of cases pending before this *Court*. Third, the average number of cases before each district judge is

---

[2] Using another rough estimate, the approximately eight million people residing in just the Northern District of Texas more than doubles the population of the entirety of Oklahoma—not considering the population of only the Western District of Oklahoma. Thus, simply comparing the two districts by the number of pending cases does not provide the Court with an accurate estimation.

vastly different from the *actual* number of cases before this district judge. As of June 1, 2020, the number of civil cases actually pending before the Court was 309. To be sure, the Court does not have the administrative backlog that Defendant postulates.

On the contrary, beginning January 1, 2020, the Court began retaining additional civil cases. As the Court recently found, "[t]he Amarillo Division is not strained or backlogged with civil actions waiting to be set for trial." *Barton*, 2020 WL 1809702, at *5. The Court will not assume, based on speculation, that the Western District of Oklahoma would dispose of this case in an easier, more expeditious, and less expensive manner. The Court will properly and promptly address any and all difficulties that may arise during the course of this case. The Court finds that this factor weighs against transfer.

### 2. *Local Interest in Having Localized Interests Decided at Home*

The second public interest factor is "the local interest in having localized interests decided at home." *Volkswagen I*, 371 F.3d at 203. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 832-33 (N.D. Tex. 2013) (Boyle, J.) (cleaned up). The Court also considers "those actually affected—directly and indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318.

This factor does not favor transfer. It is clear that both districts have local interests in this case. Defendant is correct that "Oklahoma has a local interest in having localized construction disputes decided at home."[3] ECF No. 16, at 7. But Texas has a "local interest" in this construction

---

[3] Defendant also points to Oklahoma law in support of its argument that litigating this case in the Northern District of Texas is against Oklahoma public policy. ECF No. 16, at 6–7. However, the statutes cited are irrelevant to the case at hand. Simply put, Oklahoma law makes construction contracts "void and unenforceable" if they contain *forum selection clauses* that "require" disputes be resolved in a state other than Oklahoma. *See* OKLA. STAT. tit. 15, § 221(E) (2006). But nothing in the contract *required* this case be brought in Texas. And nothing in Oklahoma law *prohibits* the parties from litigating before this Court.

dispute, too. This case involves business interactions where a Texas corporation allegedly "suffered its substantial damages in this district—its home forum." *Id.* at 11. Specifically, Plaintiff's suit is based on fraud and misrepresentation in the execution of the contract, as well as the financial injuries that flowed from the alleged breach of contract—events and injuries that occurred in Amarillo, Texas. ECF No. 43, at 10–11. Additionally, Plaintiff claims it "drilled and constructed the pipeline under the Red River, and into the Northern District of Texas." ECF No. 43, at 8.

Defendant's counterclaims involve an alleged breach of contract for the construction of the remainder of the pipeline—from the Red River to Bowie, Texas—construction that occurred wholly in this district.[4] *See generally* ECF No. 15. Further, this Court sits in the same location as Plaintiff's principle place of business, while the Defendant's principle place of business lies in the *Northern* District of Oklahoma. While the injuries would not necessarily be *felt* in the Western District of Oklahoma, the parties would be "actually affected—directly and indirectly" in Amarillo and Tulsa. *Volkswagen II*, 545 F.3d at 318.

Accordingly, the Court finds that while there are local interests favoring both districts, the local interests in Amarillo are not outweighed by those in Oklahoma City. *See Moore*, 2018 WL 514258, at *7 (denying a motion to transfer where "a substantial amount of events that gave rise to this suit . . . occurred across many different locations and venues."); *see also Pension Advisory Group*, 771 F. Supp. 2d at 711 (finding this factor neutral where Texans brought suit against non-Texans involving business interactions between the parties and both the Texas forum and the non-Texas forum had a significant interest in the matter). At best, this factor is neutral.

---

[4] The fact that Defendant's counterclaims are based on construction in Texas further undermines its argument for transfer. As stated by Defendant, "state legislatures, including the Texas legislature, 'are in favor of local courts resolving in-state construction disputes' even where a large general contractor involved in the work is headquartered elsewhere . . . ." ECF No. 16, at 7. Thus, both states have a public policy interest in this case.

14

### 3. *Familiarity of the Forum with the Law that will Govern the Case*

Third, the Court must weigh "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Defendant argues that "the Western District of Oklahoma is far more familiar with Oklahoma law than this Court, having employed it in nearly every case sitting before it in diversity jurisdiction." ECF No. 16, at 6. But this is a federal court and "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). And because Defendant fails to detail *any* differences between Oklahoma and Texas contract law, this Court is "not aware of any exceptionally arcane features of [Oklahoma] contract law that are likely to defy comprehension by a federal judge sitting in [Texas]." *Id.* The Court concludes this factor is neutral.

### 4. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

The last public interest factor is "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen I*, 371 F.3d at 203. Dovetailing with the previous factor, Defendant's only argument is that "[g]iven its familiarity with Oklahoma law, adjudication of [Plaintiff]'s claims in the Western District of Oklahoma would make it more likely that unnecessary problems in the application of foreign law are avoided." ECF No. 16, at 6. For the same reasons as with the previous factor, the application of Oklahoma law in this case does not favor transfer. And neither party has proffered any argument to that effect. This factor is neutral.

### C. Combined Factors and Conclusion

Upon consideration of all the private and public factors, the Court concludes that the Western District of Oklahoma is not a clearly more convenient venue than the Northern District of Texas. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by

the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. Therefore, Plaintiff's choice of forum, in this case, tips the scales against transfer. The Court also acknowledges that "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *Moore*, 2018 WL 514258, at *10 (cleaned up). Further, Plaintiff—the "proper plaintiff"—chose to file suit in its home venue and did not engage in any improper forum shopping. Accordingly transfer to the Western District of Oklahoma is not warranted and the Court DENIES Defendant's Motion to Transfer (ECF No. 16).

## V. PLAINTIFF'S MOTION TO ENJOIN PROSECUTION OF PARALLEL PROCEEDINGS

Next, the Court must determine whether it should enjoin Defendant from prosecuting the case it filed in the Western District of Oklahoma. "The Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *In re Amerijet, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015), as revised (May 15, 2015) (per curiam) (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). District courts have discretion to enjoin the filing of related lawsuits in other district courts. *In re Amerijet, Inc.*, 785 F.3d at 976.

After reviewing the evidence and the applicable law, Plaintiff meets all the requisite factors for the injunction under the first-to-file-rule. The Texas Action was the first-filed suit, even by just three hours. Further, the cases substantially overlap. Defendant's primary defense in the Texas Action is substantially similar to its claims in the Oklahoma Action. In the Oklahoma Action, Defendant seeks declaratory judgement against Plaintiff's claims in the Texas Action. "As such, there is a substantial risk that rulings in" the Oklahoma Action would "'trench upon the authority'

of the other court and could lead to 'piecemeal resolution of the issues that call for a uniform result.'" *Id.* (quoting *Cadle*, 174 F.3d at 603).

However, it is the Court's determination that injunctive relief is not necessary—at this time—based on the representations by Defendant. Defendant represented to the Court that it will dismiss or "not prosecute the Oklahoma Action without a ruling from this Court granting its Motion to Transfer." ECF No. 41, at 8. Because the Court previously denied Defendant's Motion to Transfer, the Court is certain that Defendant will abide by its intention—expressed to the Court—to voluntarily dismiss or refrain from prosecuting the Oklahoma Action. Accordingly, it is the opinion of the Court that Plaintiff's Motion to Enjoin (ECF No. 12) is DENIED without prejudice as to re-filing subject to Defendant's prosecution of the Oklahoma Action.

## VI.  CONCLUSION

For the foregoing reasons and after considering all arguments, it is ORDERED that Defendant's Motion to Transfer (ECF No. 16) is DENIED. It is further ORDERED that Plaintiff's Motion to Enjoin (ECF No. 12) is DENIED without prejudice as to refiling.

**SO ORDERED.**

June _1_, 2020

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE